UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT


**DAVID RURAN,**
      -Plaintiff


    -v-                                         CIVIL 3:03CV452(CFD)(TPS)


**BETH EL TEMPLE OF**
**WEST HARTFORD, INC.**
      -Defendant


## RULING ON PLAINTIFF'S MOTION TO COMPEL AND FOR EXPENSES

The plaintiff, David Ruran, commenced this action against the defendant, Beth El Temple of West Hartford, Inc. ("Beth El"), alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621-634 (2004) and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-58 *et seq.* (Compl. ¶¶ 32-41). Pending before the court is the plaintiff's Motion to Compel and for Attorney's Fees (**Dkt. #22**). As explained below, the plaintiff's motion to compel, in all respects, is **GRANTED**. At the conclusion of all proceedings, on application, the court will consider the amount of attorney's fees, if any, that should be awarded in connection with this motion. See Fed. R. Civ. P. 37(a).

**Background**

The facts as they are alleged in the complaint are as follows:

Mr. Ruran was born on February 6, 1937. (Compl. ¶ 8). He began working as Education Director for the defendant in 1974. (Id. ¶ 9). He began serving the dual role of Executive and Educational Director in 1987 and continued in these positions until 1994. (Id. ¶ 10). At that time, he became the full-time Executive Director and was offered his first contract of employment. (Id. ¶ 11). This contract expired in 1998. (Id.). Subsequently, the plaintiff negotiated a new five-year contract through which he was to continue to serve as Executive Director until June 30, 2003. (Id. ¶ 12).

Throughout his employment, Mr. Ruran had "consistently received positive feedback from his professional leadership peers, former Presidents, and numerous members of Defendant's congregation." (Id. ¶ 13). Still, during this time, Former President Michael Cohen, as well as other members of the congregation, occasionally questioned him regarding his age. (Id. ¶¶ 14-15). The other professional workers in Beth El's employ are, upon information and belief, at least fifteen to twenty years younger than Mr. Ruran. (Id. ¶ 19).

In all of his twenty-eight years of employment with the defendant, he only received two written performance evaluations.

(Id. ¶¶ 20, 22). He received the first in or around 1998 which was unremarkable. (See id. ¶ 21). He received the second on March 18, 2002. (Id. ¶ 22). According to Mr. Ruran, it was "replete with misstatements and misrepresentations." (Id. ¶ 23).

Accordingly, at Mr. Ruran's request, a meeting was held concerning his review at which he, President Stuart Bernstein, and Vice Presidents Naomi Cohen and Bill Kleinman were present. (Id. ¶ 24). The meeting, which lasted approximately ten to fifteen minutes, "did not offer Plaintiff time to voice his concerns regarding the evaluation." (Id. ¶¶ 25-26). As such, he requested the opportunity to respond in writing after his previously-scheduled trip to Israel. (Id. ¶ 26). Before he responded, however, the President and Vice Presidents approached him and "indicated that unless he was prepared to announce that he did not wish to seek a new term of employment, they were going to recommend to Defendant's Board of Directors that his contract not be renewed at the Board meeting scheduled for May 14, 2002." (Id. ¶ 29). The President and Vice Presidents so recommended and the Board of Directors adopted their position. (Id. ¶¶ 30-31). Therefore, the plaintiff was scheduled to be involuntarily terminated in June of 2003. (Id. ¶ 3). Consequently, on March 14, 2003, he initiated this action. (Dkt. #1).

In his Amended Complaint, filed on April 8, 2003, Mr. Ruran alleges that Beth El discriminated against him on the basis of age in violation of the ADEA and the CFEPA. (Compl. at 6-7).

Specifically, he complains that his contract was not renewed on the basis of his age and that Beth El has "a pattern and practice of discriminating against older employees in which it forces older, long term employees out of their employment, replacing them with younger [and less-qualified] employees." (Id. ¶¶ 32, 34, 37, & 39). The defendant, in response, asserts five affirmative defenses: (1) that the plaintiff's complaint fails to state any claims upon which relief can be granted, (2) that the defendant did not engage in any unlawful discrimination, (3) that, to the extent that they fail to comply with procedural requirements, the claims should be dismissed, (4) that the plaintiff has failed to act reasonably to mitigate damages, and (5) that his damages are the result of conduct of a third party or third parties for whom the defendant is not legally responsible. (Ans. at 7).

The instant motion to compel centers on the plaintiff's First Set of Interrogatories and Requests for Production dated September 29, 2003. (See Pl.'s Mem. Supp. Mot., 9/8/04, at 1). Generally, the plaintiff alleges that the defendant's objections are "inadequate as a matter of law, without basis in fact, and without merit." (Id.).

### Standard of Review

The scope of permissible discovery is quite broad. Marchello v. Chase Manhatten Auto Finance Corp., 219 F.R.D. 217, 218 (D. Conn. 2004). See also Hickman v. Taylor, 329 U.S. 495, 507

(1947)(stating that "the deposition-discovery rules are to be accorded a broad and liberal treatment"). Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth its scope and limitations, providing:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). "Discovery is normally allowed into any matter that bears upon the issues or reasonably could lead to relevant information." Kimbro v. I.C. System, Inc., No. 3:01CV1676, 2002 U.S. Dist. LEXIS 14599, at *2 (D. Conn. Jul. 22, 2002). Moreover, in the Second Circuit, "this obviously broad rule is liberally construed." Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988).

If a party resists or objects to discovery, Rule 37 of the Federal Rules of Civil Procedure provides that the other party, "upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery . . . ." Fed. R. Civ. P. 37(a). A party may object to a request if it is irrelevant, overly broad, or unduly burdensome. Charles A. Wright, et al., 8A Federal Practice & Procedure § 2174, at 297 (2d ed. 1994). To prevail on its objection, however, the objecting

-5-

party must do more than "simply intone [the] familiar litany that the interrogatories are burdensome, oppressive or overly broad." Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984). The objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." Id. (internal citations and quotation marks omitted). See also Kimbro, 2002 U.S. Dis. LEXIS 14599 at *2 (stating that "the objecting party . . . bears the burden of showing why discovery should be denied")(citation omitted). Moreover, the court, in deciding discovery issues, is afforded broad discretion. See Wills v. Amerada Hess Corp., 379 F.3d 32, 41 (2d Cir. 2004)

Rule 36 of the Federal Rules of Civil Procedure outlines the procedures relating to requests for admission. In pertinent part, it states:

> A party may serve upon any other party a written request for the admission . . . of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . . If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission . . . .
> 
> . . . .

> The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the court determines that an objection is justified, it shall order that an answer be served. If the court determines that an answer does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served.

Fed. R. Civ. P. 36(a).

## Discussion

Because the defendant, as the nonmoving party, bears the burden of demonstrating why the requests should be denied, the court will focus on its opposition brief. (Dkt. # 25).

Regarding Requests for Production Nos. 1 and 2, which request that the defendant produce documents identified and relied upon in answering the interrogatories, the defendant objects on the grounds that it is "overly broad and to the extent that it includes documents protected by the attorney-client privilege." (D.'s Mem. Opp. Mot., 9/29/04, at 1). The court finds that the defendant has failed to sustain its burden. Requesting that the defendant produce, for example, documents reflecting "all statements and interviews conducted by the Defendant relating to the Plaintiff's allegations" may be broad, but it is not *overly* broad. (See id.). Certainly, documents identified and relied upon in answering the interrogatories are relevant and not so overly broad as to preclude production.

In addition, the defendant's argument concerning those documents allegedly protected by the attorney-client privilege

-7-

evinces some misapprehension of the privilege and the methods by which one perfects it. Broadly, the attorney-client privilege applies only to "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). However, the privilege is more narrow: its purpose being to "shelter the confidences *a client shares* with his or her attorney when seeking legal advice, in the interest of protecting a relationship that is the mainstay of our system of justice." Clute v. Davenport, 118 F.R.D. 312, 314 (D. Conn. 1988)(emphasis added)(drawing a distinction between "confidences entrusted to an attorney by a client" and "conclusions of an attorney that have been related to a client"). Moreover, regarding advice of counsel, "[u]nless the legal advice reveals what the client has said, no legitimate interest of the client is impaired by disclosing the advice." SCM Corp. V. Xerox Corp., 70 F.R.D. 508, 522 (D. Conn. 1976). Simply because a document was "prepared by counsel" or was the result of "interviews between counsel and the Defendant" does not necessarily mean that it is protected by the attorney-client privilege. (See D.'s Mem. Opp. Mot., 9/29/04, at 1).

Furthermore, to properly invoke the attorney-client privilege, Local Rule 37 requires that

> the party asserting the privilege . . . *shall* provide the
> following information in the form of a privilege log:

>       (1) The type of document;
>
>       (2) The general subject matter of the document;
>
>       (3) The date of the document;
>
>       (4) The author of the document; and
>
>       (5) Each recipient of the document.

Loc. R. Civ. P 37(a)(emphasis added).  "Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected."  Bowne v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993)(citations omitted); see also In re Grand Jury Subpoena Dtd. Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984).  Where a party fails to perfect a claim of privilege that privilege is deemed waived.

The defendant has not established to the court's satisfaction that the requests here are overly broad.  As such, it has failed to meet its burden of demonstrating why the motion to compel should be denied.  Moreover, because Beth El failed to produce a privilege log, and consequently to perfect its claim of privilege, the court finds that the privilege, if it ever existed vis-à-vis the documents at issue, has been waived and all responsive documents must be produced.

The defendant's argument regarding Requests for Production Nos. 8, 9, and 10, which relate to documents in connection with the plaintiff's job performance, is similarly unpersuasive.  (See D.'s

Mem. Opp. Mot., 9/29/04, at 2).  Beth El failed to produce a privilege log and simply because documents were "prepared by or with the assistance of counsel concerning the Plaintiff's allegations" does not necessarily mean that they are protected by the attorney-client privilege.  (See id.).

Similarly, in Request for Production No. 11, through which the plaintiff seeks to compel Beth El to produce "all documents written by members or congregants of Defendant which concern Plaintiff's performance," the defendant fails to sustain its burden of demonstrating that discovery should be denied.  (See id.).  The defendant argues that "[t]his request is not limited as to time and is construed so broadly as to include documents that may be written by the defendant's attorney, who is [a] member of the defendant's congregation, and such documents are protected by [the] attorney-client privilege."  (Id.).  Because Mr. Ruran's claims rely on a comparison of older evaluations to newer evaluations, the court finds that the fact that there is no limit as to time does not render the request overly broad.  Moreover, as elucidated above, simply because the defendant's attorney happens to also be a congregation member does not mean that his communications as a congregation member are protected by the attorney-client privilege.  For the same reasons, the court finds that the defendant failed to sustain its burden and is hereby ordered to adequately respond to the requests.

Fourth, the defendant contends that Requests for Production

Nos. 12 and 13, which seek to compel the production of documents from the personnel files of other employees, "have no relevance to the Plaintiff's claims of unlawful termination and . . . constitutes private information protected from disclosure under C.G.S. § 31-128F." (D.'s Mem. Opp. Mot., 9/29/05, at 2). Despite Beth El's assertion to the contrary, Mr. Ruran is not obligated to "move for an order allowing the release of non-party personnel files." (See id.). Nor is he required to "obtain the employees' permission to do so." (See id.). Nor is he bound to "demonstrate the relevance or necessity of obtaining these materials." (See id.).

As aforementioned, the *defendant*, as the non-party, bears the burden of demonstrating, *inter alia*, that the request is *not* relevant. See Kimbro, 2002 U.S. Dis. LEXIS 14599 at *2. It has failed to do so. Indeed, the court finds that others' personnel files are certainly relevant to Mr. Ruran's claim of disparate treatment under the ADEA--for, a claim of disparate treatment begs the question: "Disparate to what?" Moreover, based upon this finding of relevance, the court hereby orders that Beth El produce the responsive documents, thus satisfying the second exception to section 31-128f of the Connecticut General Statutes. See Conn. Gen. Stat § 31-128f (2004).[1]

---

[1] Section 31-128f of the Connecticut General Statutes states, in pertinent part:

The defendant's fifth objection relates to Requests for Production Nos. 14, 15, 16, and 17 which seeks to compel the defendants "to produce documents authored or co-authored by Stuart Bernstein, Susan Kallor, Ann Brandwein, and Gary Starr, which refer or relate to Plaintiff's job performance." (D.'s Mem. Opp. Mot., 9/29/05). Beth El states that it "will provide all documents in [its] possession, custody or control in compliance with these requests, only if they were not authored or co-authored by the defendant's attorney." (Id.). Again, the defendant failed to sustain its burden of perfecting its claim of privilege with regard to these documents. The court is not convinced that the documents are protected by the attorney-client privilege and the defendant failed to produce a privilege log indicating the relevant data. As such, even if the documents were protected by the attorney-client privilege--again, given the defendant's broad (and inaccurate) characterization of the attorney-client privilege, the court does not believe they were--the privilege has been waived and the documents must be produced.

Lastly, the defendant objects to Requests for Production Nos. 20, 21, and 22, which seeks to compel the defendant "to produce all

---

>   No individually identifiable information contained in the
>   personnel file or medical records of any employee shall
>   be disclosed without the written authorization of such
>   employee except . . . (2) pursuant to a lawfully issued
>   administrative summons or judicial order . . . .
>
> Conn. Gen Stat. § 31-128f (2004).

-12-

documents, which relate to any complaint of age discrimination, or employment termination of its employees older than 40 or 50 years old," on the same grounds as the other non-party employee file requests. (<u>Id.</u> at 3). For the same reasons, the court finds that the responsive documents must be produced.

This is a discovery ruling and order reviewable pursuant to the "clearly erroneous" standard of review.  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 6(a), (e) and 72(a); and Rule 2 of the Local Rules for U.S. Magistrate Judges.  As such, it is an order of the court.  <u>See</u> 28 U.S.C. § 636(b)(written objections to ruling must be filed within ten days after service of same).

**IT IS SO ORDERED.**

Dated at Hartford, Connecticut this 23nd day of February, 2004.

_____
**Thomas P. Smith
United States Magistrate Judge**