Westlaw

Not Reported in F.Supp.2d                                                                                                  Page 1
2004 WL 1886009 (S.D.N.Y.)
**(Cite as: 2004 WL 1886009 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
RI SAU KUEN CHAN Plaintiff,
v.
NYU DOWNTOWN HOSPITAL et al. Defendants.
**No. 03 Civ. 3003(CBM).**

Aug. 23, 2004.

Ian Wallace, Michael Shen & Associates, PC, New York, NY, for plaintiff.

Amy Ventry, Nixon Peabody, LLP, Garden City, NY, for defendants.

MEMORANDUM OPINION AND ORDER

MOTLEY, J.

**\*1** This case arises out of plaintiff's allegations of employment discrimination and disparate treatment based upon race, national origin, and gender. Presently before the court is plaintiff's appeal of an order entered by Magistrate Judge Nathaniel Fox on May 19, 2004. The order effectively denies plaintiff's request for all sexual harassment complaints made by women at defendant hospital. It also limits defendants' obligation to produce salary disparity, race discrimination, or national origin discrimination complaints made by women at defendant hospital from the period 1998 to present, as opposed to plaintiff's requested period of 1995 to present. For the reasons stated below, after careful consideration of the letters before the court, plaintiff's motion is DENIED IN PART and GRANTED IN PART.

BACKGROUND

Plaintiff Ri Chan, a Chinese woman, commenced employment with defendants New York University (N.Y.U) Downtown Hospital, the Rusk Institute of Rehabilitation Medicine, and the NYU Medical Center in February 2000. Pl.'s Second Amended Complaint at ¶ 12. She resigned from her position in May 2002, with an effective termination date of September 2002. *Id.* at ¶ 118, Def.'s Letter, July 7, 2004, Ex. E.

Plaintiff thereafter commenced litigation against defendants in April 2003, charging them with violating Title VII, 42 U.S.C. § 2000e et seq., New York State Human Rights Law, Executive Law § 290, et seq., and New York City Human Rights Law, § 8-101 et seq., of the New York City Administrative Code. Pl.'s Second Amended Complaint at 1. Specifically, she avers that defendants discriminated against her on account of race, national origin, and sex and retaliated against her for having complained about wages, promotion, hostile work environment, sexual harassment by her immediate supervisor, and other terms and conditions of employment. *Id.* [FN1] Although plaintiff resigned from her position, she claims defendants constructively discharged her. *Id.* at 118.

> FN1. For the purposes of plaintiff's motion, it is important to note that plaintiff's suit does not contain an allegation against defendants for sexual harassment based upon the conduct of Dr. O'Young, her immediate supervisor. Such an allegation would be untimely under the relevant statutes of limitation. *See* Memorandum and Order, January 30, 2004 ("All parties agree that any claims arising from the actions allegedly taken by Dr. O'Young are time-barred"). Instead, plaintiff charges defendants with retaliating against her for complaining about Dr. O'Young's alleged inappropriate conduct and harassment.

The case was initially before Judge Laura Swain, who referred all pretrial and case management issues to Magistrate Judge Nathaniel Fox. In November of 2003, the case was reassigned to this court.

On May 18, 2004, the parties had a telephonic conference with Magistrate Judge Fox to address various discovery disputes surrounding plaintiff's first and second documents requests. Although plaintiff's submissions to this court appealing the order are vague, the court gathers that plaintiff requested defendants to produce information about sexual harassment complaints made by women employees of defendants, the actions taken in response to those claims, whether these complaints were investigated,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 2
2004 WL 1886009 (S.D.N.Y.)
**(Cite as: 2004 WL 1886009 (S.D.N.Y.))**

remedial action taken, and whether the complaints were retaliated against. *See* Pl.'s Letter, June 28, 2004. She also requested all documents relating to any and all discrimination complaints and/or actions taken with regard to those complaints, without any sort of temporal limitation on the request. Def.'s Ex. D, Pl.'s First and Second Set of Document Requests.

**\*2** Following the hearing, on May 19, 2004, Judge Fox entered an order mandating defendants to disclose, inter alia, "any salary, race discrimination or national origin discrimination complaints made by women at the New York University Downtown Hospital during the period 1998 to present," *see* Order, May 19, 2004. By so limiting the discovery order, Judge Fox effectively denied plaintiff's request for documents relating to other employees' complaints about sexual harassment and defendants' response thereto.

On May 28, 2004, plaintiff sent Judge Fox a letter appealing the May 19, 2004 order, stating that she objects to "that portion of the Order that denied Plaintiff's discovery request for all sexual harassment complaints made by women." Def.'s Letter, July 7, 2004, Ex. B, Pl.'s Letter to Magistrate Judge Fox, May 28, 2004. From plaintiff's perspective, "if other women were fired after complaining about sexual harassment, this would be highly relevant in demonstrating how Defendants' dealt with such complaints and would raise an inference that Plaintiff was also retaliated against because of her sexual harassment complaints." *Id.* She also objects to the May 19, 2004 order on the grounds that "(t)he order is overly restrictive in that it directs Defendants only to produce Complaints from 1998 to present: such evidence does not allow Plaintiff to obtain sufficient records to establish a discriminatory pattern." *Id.* In short, she avers that defendants should have to produce complaints beginning at least in 1995 because the "chief actors" who engaged in discriminatory, harassing, and retaliatory conduct against plaintiff "were hired well before 1998" and "it is essential in proving Plaintiff's case to evaluate how they dealt with prior complaints of other female employees, and whether they took retaliatory action against them as a result." *Id.*

On June 17, 2004, Judge Magistrate Fox issued an order declining to address any objections to the May 19, 2004 order, stating that because the court's determinations were nondispositive, under Fed.R.Civ.P. 72, "any objections to those determinations should be presented to the assigned district judge for resolution." *See* Order, June 17, 2004.

Accordingly, on June 28, 2004, plaintiff appealed Magistrate Judge Fox's May 19, 2004 order to this court.

ANALYSIS

I. The Court Will Consider the Appeal as Timely Made

Defendant's first objection to plaintiff's appeal is that it is untimely. "Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Fed.R.Civ.P. 72(a). Here, plaintiff sent a letter to Magistrate Judge Fox within ten days of entry of the order in question. Approximately three weeks later, on June 17, 2004, Judge Fox declined to address the objection. Accordingly, plaintiff appealed to this court within 10 days of Judge Fox's order declining to address the objections on the merits.

**\*3** The issue is whether plaintiff's letter to Magistrate Judge Fox on May 28, 2004 was a request for reconsideration or an appeal. If the letter was a request for Judge Fox to reconsider the order, then the time for plaintiff to appeal to this court was tolled pending reconsideration before Magistrate Judge Fox. *See* Nerox Petroleum Ltd. v. Access Industries, Inc., 2003 WL 21872389, 1 (S.D.N.Y. Aug.7, 2003) ("While the Federal Rules do not directly address this question, courts in this District have found that, during the pendency of a motion for reconsideration before a magistrate judge, the time for filing an objection to the District Court is tolled") *citing* Yurman Design Inc. v. Chaindom Enterprises, 2000 WL 1871715 at 1 (S.D.N.Y. Dec.20, 2000); Equal Employment Opportunity Commission v. Venator Group Speciality Inc., 2001 WL 246376, at 4 (S.D.N.Y. Mar.12, 2001). In such case, plaintiff timely appealed to this court within ten days after Judge Magistrate Fox issued an order declining to address the earlier motion on the merits.

By contrast, if plaintiff's May 28th letter was an appeal, then this court is barred from hearing the appeal as being untimely made; the plain wording of the statute requires parties to appeal from interlocutory orders issued by magistrate judges within ten days. "These provisions clearly reflect the policy that litigation not be unduly delayed in magistrate judges' courts." Koehler v. Bank of

Not Reported in F.Supp.2d                                                                                              Page 3
2004 WL 1886009 (S.D.N.Y.)
**(Cite as: 2004 WL 1886009 (S.D.N.Y.))**

*Bermuda Ltd.,* 2003 WL 466206 at 1 (S.D.N.Y. Feb.21, 2003) (declining to extend the time to appeal from a magistrate judge's order from ten days to fourteen days).

Plaintiff's May 28, 2004 letter to Magistrate Judge Fox clearly stated: "This letter is being submitted in order *to appeal* this Court's order, dated May 19, 2004." Def.'s Letter, July 7, 2004, Ex. B (emphasis added). Thus, plaintiff's express language suggests her letter constituted an appeal as opposed to a request for reconsideration. However, reading the letter as a whole suggests that to decline to consider plaintiff's motion because she used the word "appeal" as opposed to "reconsideration" would be overly formalistic; the spirit and nature of her letter is to ask Magistrate Judge Fox to reconsider the earlier ruling. As such, the court finds that the time to appeal was tolled pending Magistrate Judge Fox's reconsideration of the matter and plaintiff's application to this court for appeal was therefore timely. The court will turn to the merits of her appeal.

II. The May 19, 2004 Order Was Erroneous in Denying Plaintiff Discovery of Sexual Harassment Complaints but Proper in Limiting Defendants' Obligation to Produce Documents from 1998 to Present.

A. Standard of Review

When considering objections to a magistrate judge's ruling on a nondispositive matter, a district judge will modify or set aside any portion of the magistrate's order found to be "clearly erroneous or contrary to law." Rule 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *U.S. v. Isiofia,* 370 F.3d 226, 232 (2d Cir.2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y.2002) (internal quotations omitted). Further, a magistrate judge's resolution of discovery disputes deserves "substantial deference" by the district court, *Norex Petroleum Ltd.,* 03 WL 21872389, at 2 (citation omitted), and reversal of a magistrate judge's order is only appropriate if there is an abuse of discretion. *U.S. Parcel Service of Amer., Inc. v. The Net, Inc.,* 2004 WL 1344835, at 2 (E.D.N.Y. June 14, 2004) (citation omitted).

B. All Sexual Harassment Complaints

**\*4** Plaintiff seeks discovery into all sexual harassment complaints made by women, the action taken in response thereto, whether they were investigated, and whether the complainants were retaliated against. Pl.'s Letter, June 28, 2004. Defendants aver that "(a)s Plaintiff does not have a sexual harassment claim, discovery into other complaints of sexual harassment, and any remedial actions taken by NYU Downtown Hospital, are simply not relevant to her claims of gender discrimination and/or retaliation." Def.'s Letter, July 7, 2004. Plaintiff avers that while she does not have a claim for sexual harassment, she charges defendants with retaliating against her for complaining about sexual harassment. Pl.'s Letter, June 28, 2004. "(I)f other women were fired after complaining about sexual harassment, this would be highly relevant in demonstrating how Defendants' dealt with such complaints and would raise an inference that Plaintiff was also retaliated against because of her sexual harassment complaints." *Id.*

Pursuant to Fed.R.Civ.P. 34(a), a party may serve on another party a request to produce documents relevant to a claim or defense of a party. *See* Fed.R.Civ.P. 34(a). Fed.R.Civ.P. 26(b)(1) allows discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. *See* Fed.R.Civ.P. 26(b)(1). Courts broadly construe relevant to "encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). "This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided." *Rodger v. Electronic Data Systems, Corp.,* 155 F.R.D. 537 (E.D.N.C.1994) *citing Ardrey v. United Parcel Service,* 798 F.2d 679, 683 (4th Cir.1986), *cert. denied,* 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987) (Title VII claim). *See also Flanagan v. Travelers Insurance Co.,* 111 F.R.D. 42, 45 (W.D.N.Y.1986) (courts should avoid imposing unnecessary limits on discovery in Title VII cases); *Finch v. Herclues, Inc.,* 149 F.R.D. 60, 62 (D.Del.1993) ("the necessity for liberal discovery to clairfy the complex issues encountered in litigation seeking to redress employment discrimination has

Not Reported in F.Supp.2d                                                                                                                     Page 4
2004 WL 1886009 (S.D.N.Y.)
**(Cite as: 2004 WL 1886009 (S.D.N.Y.))**

been widely recognized"). Thus, the scope of discovery must go beyond the specifics of the plaintiff's claim. *See e.g.,* Louison v. Blue Cross Blue Shield of Greater New York, 1990 WL 108347 (S.D.N.Y. July 23, 1990) ("As for the substantive scope of [plaintiff's discovery] request, it would be inappropriate to exclude complaints concerning discriminatory hiring even though plaintiff is alleging only discriminatory failure to promote and termination, since evidence relating to hiring may be relevant to plaintiff's complaint of wrongful termination").

Here, plaintiff asserts that defendants retaliated against her in violation of Title VII. Title VII provides that "[i]t shall be unlawful employment practice for an employer to discriminate against any of his employees ... because [such employee] has opposed any practice made an unlawful practice by this subchapter." 42 U.S.C. § 2000e-3(a). In Title VII employment discrimination and retaliation cases, courts apply the three-step burden-shifting analysis set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *See* Sumner v. U.S. Postal Serv., 899 F.2d 203, 208 (2d Cir.1990). According to this three-step analysis, the plaintiff is first required to make out a *prima facie* case. To establish a *prima facie* case of retaliation, an employee must show (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. Feingold v. New York, 366 F.3d 138, 156 (2d Cir.2004) (quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2d Cir.1995)). Once the plaintiff has made a *prima facie* case, the defendant has the burden of articulating a legitimate, non-retaliatory reason for the complained action. If the defendant meets this burden, the plaintiff must carry the ultimate burden of persuasion by demonstrating that there is sufficient potential proof for a reasonable jury to find the proferred legitimate reason merely a pretext for impermissible retaliation. *Id.*

*5 Information regarding other complaints of sexual harassment made by defendants' employees and actions taken in response thereto is clearly relevant to plaintiff's ability to make out her prima facie case of retaliation. A retaliation plaintiff may establish the third prong of the prima facie case either "indirectly by showing that the protected activity was followed closely by discriminatory treatment, or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed" against her. Smith v. Ward Leonard Elec. Co., Inc., 2004 WL 1661098, 7 (S.D.N.Y., July 23, 2004) citing Johnson v. Palma, 931 F.2d 203, 207 (2d Cir.1991)(quoting DeCintio v. Westchester County Med. Ctr., 821 F.2d 111, 115 (2d Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987)); Stewart v. New York City Dept. of Information Technology and Telecommunications, 2002 WL 83672, 3 (S.D.N.Y., Jan.18, 2002) citing Sumner v. United States Post Office, 899 F.2d 203, 209 (2d Cir.1990) (citations omitted); Reilly v. Metro-North Commuter R. Co., 1996 WL 665620, 11 (S.D.N.Y., Nov.5, 1996); James v. Runyon, 843 F.Supp. 816, 826 (N.D.N.Y.1994).

The information is also relevant to plaintiff's ability to rebut defendants' proffered legitimate, non-retaliatory reason for its actions. In Hollander v. American Cyanamid Co., 895 F.2d 80, 84 (2d Cir.1990), the Court of Appeals reversed the dismissal of plaintiff's age discrimination claim on the grounds that the district court improperly limited the scope of plaintiff's discovery to defendant corporation's practices in the discrete facility where plaintiff worked, as opposed to allowing company-wide discovery. *Hollander* observed:

"It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's purported nondiscriminatory explanation. *See, e.g.,* McDonnell Douglas, 411 U.S. at 804-05, 93 S.Ct. at 1825-26; Liberman v. Gant, 630 F.2d 60, 68-69 (2d Cir.1980); Logan v. St. Luke's-Roosevelt Hosp. Center, 636 F.Supp. 226, 234 (S.D.N.Y.), aff'd, 805 F.2d 391 (2d Cir.1986). Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive....Because employer's rarely leave a paper trail--or 'smoking gun'--attesting to a discriminatory intent, see Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 464-65 (2d Cir.1989) (citing cases); Dister v. Continental Group, Inc., 859 F.2d 1108, 1112 (2d Cir.1988), disparate treatment plaintiffs often must build their cases from pieces of circumstantial evidence which cumulatively undercut the credibility of the various explanations offered by the employer."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                     Page 5
2004 WL 1886009 (S.D.N.Y.)
**(Cite as: 2004 WL 1886009 (S.D.N.Y.))**

*Hollander,* 895 F.2d at 84-85. Although *Hollander* involved a disparate treatment claim, the *McDonnell-Douglas* burden-shifting test applies both in the context of retaliation and disparate treatment: both plaintiffs must refute defendant's neutral explanation for actions taken. Accordingly, plaintiff should be allowed the opportunity to discover circumstantial evidence relating to treatment of other employees complaining of sexual harassment in order to build her case of retaliatory constructive discharge.

**\*6** Accordingly, the court finds that consistent with the policy that courts should afford Title VII plaintiffs broad discovery and the more general policies underlying the Federal Rules of Civil Procedure, and because the requested documents are undeniably relevant to plaintiff's retaliation claim, plaintiff is clearly entitled to discovery of other sexual harassment complaints made by defendants' employees. To this extent, plaintiff's motion for reconsideration of Magistrate Fox's order is GRANTED. Defendants shall produce documents containing information regarding complaints of sexual harassment made by employees and the action taken in response to those claims.

C. The Relevant Time Frame for which Defendants Must Produce Documents

Magistrate Fox limited plaintiff's document request to the period 1998 to present. This court is not persuaded that limiting plaintiff's request to the two years preceding the start of her employment is clearly erroneous or contrary to law. *See e.g., Bujnicki v. American Paving & Excavating, Inc.,* 2004 WL 1071736 (W.D.N.Y. Feb.25, 2004) (limiting Title VII plaintiff's discovery request to the two years preceding plaintiff's claims of discrimination and the two years after plaintiff's claims of discrimination).

CONCLUSION

Plaintiff's motion is GRANTED to the extent that defendant is hereby ordered to produce all documents containing information about sexual harassment complaints made by its employees and actions taken in response thereto. Plaintiff's motion is DENIED on the grounds that Magistrate Judge Fox's limitation of her request to the period 1998 to present is sufficient to allow plaintiff to develop her case.

SO ORDERED.

2004 WL 1886009 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV03003 (Docket) (Apr. 29, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.